# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**November 8, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **I.R.-V. and X.C.**

**No. 19-0321** (Harrison County 17-JA-119-1 and 18-JA-12-1)

## MEMORANDUM DECISION

Petitioner Mother T.R., by counsel Allison S. McClure, appeals the Circuit Court of Harrison County's February 7, 2019, order terminating her parental rights to I.R.-V. and X.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Julie N. Garvin, filed a response on behalf of the children, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first employing a less-restrictive alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2017, the DHHR filed a child abuse and neglect petition against petitioner alleging that she abused and neglected I.R.-V. through her drug abuse.[2] Specifically, referrals indicated that petitioner was selling drugs and medication in her home and that drug addicts frequented the home. Further, the DHHR alleged that I.R.-V., then four years old, was found walking alone on a busy street. After being taken to a neighbor's home, the child disclosed that he had not eaten all day and was walking to a store. When questioned about the child's whereabouts by Child Protective Services ("CPS") workers, petitioner claimed that her neighbor grabbed the child while she was inside her home and that she spent an hour wandering the streets looking for him. At that time, a protection plan was implemented and petitioner and the child were placed in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]At the time of the petition's filing, petitioner was pregnant with her second child, X.C.

the home of petitioner's brother's girlfriend, V.S. However, shortly thereafter, V.S. called CPS to report that petitioner kept going into the bathroom and remaining there for long periods of time before passing out and sleeping all day. V.S. further reported seeing needles in petitioner's possession. During an interview conducted the next day, petitioner admitted to a history of substance abuse, but claimed she had "gotten clean from methamphetamine a few months before she got pregnant [with X.C.]" The DHHR concluded that petitioner was unwilling or unable to perform her parental duties and responsibilities, was actively abusing drugs, and her choices and drug abuse affected the safety of the child. Petitioner waived her preliminary hearing.

The adjudicatory hearing was rescheduled several times for various reasons at the request of both the DHHR and petitioner. Throughout August of 2017, September of 2017, and November of 2017, and while pregnant with X.C., petitioner tested positive for a myriad of substances including methamphetamine, buprenorphine, and norbuprenorphine. Ultimately, petitioner gave birth to X.C. in November of 2017. The DHHR filed an amended petition in February of 2018 to include X.C. in the proceedings and alleged that petitioner abused drugs during her pregnancy with X.C. Petitioner also admitted to using morphine at the time of X.C.'s birth. Further, petitioner continued to test positive for substances following the child's birth.

At an adjudicatory hearing held in March of 2018, petitioner stipulated to the conditions of abuse and neglect alleged against her, including that she had a history of substance abuse that adversely affected her parental judgment and decision-making abilities, thereby exposing I.R.-V. to a dangerous environment. Petitioner also admitted to testing positive for amphetamines and methamphetamine throughout the pendency of the case, including while pregnant with X.C. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her an improvement period later in April of 2018. As part of the terms and conditions, petitioner was required to submit to a psychological evaluation, submit to a drug and alcohol evaluation, follow any of the resulting recommendations from those evaluations, submit to random drug screens, attend individualized therapy, seek substance abuse treatment, participate in parenting and adult life skills classes, participate in supervised visitation with the children, maintain a stable and clean residence, and maintain employment.

The circuit court held a dispositional hearing in October of 2018. Petitioner failed to attend, but was represented by counsel. The circuit court suspended petitioner's supervised visitation at the request of the DHHR based upon petitioner's failure to consistently attend visits and her failure to participate in other services, and continued the dispositional hearing to allow petitioner time to appear.

The circuit court reconvened the dispositional hearing in December of 2018. The DHHR presented several witnesses in support of its motion to terminate petitioner's parental rights. Testimony established that, although petitioner complied with her improvement period for a brief period, she failed to complete any services as of the dispositional hearing. Service providers testified that petitioner failed to acknowledge her substance abuse and the effect it had on her children. Providers also testified that petitioner admitted to using methamphetamine, stating that she saw no reason to stop using the substance, but then later claimed sobriety. All of her providers described petitioner's demeanor as hostile and combative. Petitioner blamed CPS for her situation and claimed that the workers had a personal vendetta against her roommate. Testimony further

2

established that around August of 2018, petitioner began refusing to meaningfully attempt to schedule services, claiming her job and treatment program prevented her from doing so. Eventually, the service providers for parenting and adult life skills classes suspended their services due to petitioner's noncompliance. Additionally, petitioner missed several visits with the child, but complied sufficiently to avoid suspension of this service until the circuit court terminated visits in October of 2018.

A CPS worker testified that petitioner submitted to a psychological evaluation and a drug and alcohol assessment in June of 2018. Petitioner was diagnosed with unspecified personality disorder, opioid use disorder, and unspecified anxiety disorder. The evaluating psychologist noted that petitioner exhibited significant psychopathology, intense anger, a high level of instability, and little emotional control. The evaluator ultimately recommended that petitioner continue psychiatric intervention, long-term intensive individual psychotherapy, and parenting classes. The drug and alcohol assessment likewise recommended further substance abuse treatment. The CPS worker testified that petitioner failed to follow through with any of these recommendations. Although petitioner claimed that she was going to obtain her own provider for therapy services, she never provided confirmation and, several months later, eventually requested provider information from the DHHR. However, after inquiring with the recommended provider, petitioner "refused absolutely every provider and appointment that they offered."

After hearing evidence, the circuit court found that petitioner failed to fully participate in the case, acknowledge her issues with substance abuse, or attempt to address her mental health or substance abuse issues. As such, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, and that termination of her parental rights was in the children's best interests. It is from the February 7, 2019, dispositional order terminating petitioner's parental rights that she appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[3]The fathers' parental rights were also terminated during the proceedings below. The permanency plan for the children is adoption by a foster family.

On appeal, petitioner argues that the circuit court should not have terminated her parental rights without first employing a less-restrictive alternative. According to petitioner, she participated in services and showed "substantial improvement at one point during her improvement period." Further, petitioner argues that she was bonded with I.R.-V. and was developing a bond with X.C. Petitioner avers that given the testimony of her compliance with certain aspects of her improvement period, there was a reasonable likelihood that she would be able to correct the conditions of abuse in the future and that termination of her parental rights was not necessary because her children were placed in a kinship placement. As such, petitioner asserts that she should have been granted disposition pursuant to West Virginia Code § 40-4-604(b)(5).[4] We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" includes one in which the parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Petitioner failed to respond to or follow through with rehabilitative efforts designed to reduce or prevent the abuse and neglect of her children. Petitioner's compliance with services was sporadic, at best, and she failed to successfully complete any aspect of her improvement period. Testimony established that petitioner initially complied with services but eventually ceased scheduling her parenting and adult life skills classes, became combative and hostile with service providers, and only minimally complied with supervised visitation. Further, petitioner failed to comply with any of the recommendations resulting from her psychological evaluation or her drug and alcohol assessment, including failing to comply with any sort of substance abuse treatment. Petitioner tested positive for drugs several times throughout the proceedings, failed to acknowledge her issues with substance abuse, refused to schedule therapy sessions with any provider, and blamed CPS for her situation. While petitioner claims that she should have been granted a less-restrictive disposition because she would eventually be able to correct the conditions of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child

---

[4]Pursuant to West Virginia Code § 49-4-604(b)(5),

> [u]pon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, [a circuit court may] commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

4

will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (quoting syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the evidence of petitioner's lack of meaningful participation in the underlying proceedings, we agree with the circuit court's findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, we find that petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 7, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 8, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison